FILED IN Washtenaw County Trial Court; 3/20/2020 9:12 AM

## STATE OF MICHIGAN
## IN THE CIRCUIT COURT FOR THE COUNTY OF WASHTENAW

**ANDREW LIPIAN**, *an individual*,

     Plaintiff,

vs.

**JEFFERY FRUMKIN**, *an individual*,
**ELIZABETH SENEY**, *an individual*,
**PAMELA HEATLIE**, *an individual*,
**STEVEN WEST**, *an individual*,
**AARON DWORKIN**, *an individual*,
**MELODY RACINE**, *an individual*,
**CHRISTOPHER KENDALL**, *an individual*,

     Defendants.

20-000310-CZ

Case No: 20-    CZ
Hon.   JUDGE DAVID S. SWARTZ

---

**DEBORAH GORDON LAW**
Deborah L. Gordon (P27058)
Elizabeth Marzotto Taylor (P82061)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com

---

> There is a civil action between these parties arising out of the same transaction or occurrence as alleged in this complaint pending the United States District Court, Eastern District of Michigan, Southern Division, Case No: 18-cv-13321, having been assigned to Judge Arthur J. Tarnow.

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff **Andrew Lipian,** by his attorneys **Deborah Gordon Law** complains against Defendants as follows:

## Jurisdiction and Parties

This is an action for hostile environment and quid pro quo sexual harassment in violation of Title IX of the Education Amendments of 1972, *as amended*, 20 USC §1681, *et seq*., 34 C.F.R.

Exhibit 1

§106.31 *et seq.* and the Elliott-Larsen Civil Rights Act, MCL 37.21010 *et seq*.

1.      Plaintiff Andrew Lipian ("Lipian") is an individual who resides in Elyria, Ohio.

2.      Defendant **Jeffery Frumkin** ("Frumkin") is an individual who, upon information and belief, resides in Washtenaw County, and was employed by the University Michigan as Associate Vice Provost of Faculty and Academic Affairs and Interim Senior Director of the Office of Institutional Equity at all times material to the allegations raised in this complaint.

3.      Defendant **Elizabeth Seney** ("Seney") is an individual who, upon information and belief, resides in Washtenaw County, and was employed in the University of Michigan Title IX Office of Institutional Equity as Associate Director and Deputy Title IX Coordinator at all times material to the allegations raised in this complaint..

4.      Defendant **Pamela Heatlie** ("Heatlie") is an individual who, upon information and belief, resides in Washtenaw County, and was employed in the University of Michigan Title IX Office of Institutional Equity as Associate Vice Provost for Academic Affairs, Senior Director of the Office of Institutional Equity and Title IX Coordinator at all times material to the allegations raised in this complaint.

5.      Defendant **Melody Racine** ("Racine") is an individual who, upon information and belief, resides in the state of Michigan and was employed by the University of Michigan School of Music Theater and Dance as Interim Dean at all times material to the allegations raised in this complaint.

6.      Defendant **Steven West** ("West") is an individual who, upon information and belief, resides in Washtenaw County, and was employed by the University of Michigan School of Music Theater and Dance as Chair of the Voice Department at all times material to the allegations raised in this complaint.

7.      Defendant **Aaron Dworkin** ("Dworkin") is an individual who, upon information and belief, resides in Washtenaw County, and was employed by the University of Michigan School of Music Theater and Dance as Dean at all times material to the allegations raised in this complaint.

8.      Defendant **Christopher Kendall** ("Kendall") is an individual who, upon information and belief resides in Washtenaw County, and was employed by the University of Michigan School of Music Theater and Dance as Dean at some periods of time material to the allegations raised in this complaint.

9.      All Defendants were responsible for ensuring that Title IX was enforced as to faculty, ensuring that policies and procedures were in place and were complied with, and for investigating and/or reporting stopping sexual harassment by faculty of students.

10.     Jurisdiction and venue are proper as Defendants reside in Washtenaw County and the events underlying this Complaint occurred at the University, which is also in Washtenaw County.

11.     The amount in controversy exceeds 25,000.00.

### Background Facts

**Daniels and Plaintiff join the University; Daniels was viewed as a superstar and was treated as such by Defendants**

12.     In March 2019, Defendants Seney and Frumkin signed off on a Report stating that Daniels was a well-known predator during his employment at the SMTD, and that he had harassed at least 20 students.

13.     In late 2015, Plaintiff applied to the University of Michigan School of Music, Theatre and Dance ("SMTD") in order to obtain a graduate degree from its Voice Department.

14.     Plaintiff began classes at the SMTD in Fall 2016.

15.     David Daniels ("Daniels"), age 52, joined the SMTD faculty in the Fall, 2015 as a

Professor. Daniels had no academic or formal teaching experience; he had been a professional opera singer and recording artist for two decades. He was brought onboard to elevate the prestige of the SMTD Voice Department and to increase enrollment at the University.

16.     The Interim Dean of the SMTD, Melody Racine, testified that David Daniels was "lore" at the SMTD in that he was a former student who had gone on to become internationally famous.

17.     The SMTD was so anxious to bring Daniels onboard that the faculty and administration seriously considered hiring Daniels with full tenure, which would have been highly unusual. Instead, he was given an expedited path to tenure; this was also unusual.

18.     Upon his hire, the University faculty website page promoted the idea that Daniels was a major star, stating, in part, that he "has appeared with the world's major opera companies and on its main concert and recital stages. He made history as the first countertenor to give a solo recital in the main auditorium of Carnegie Hall. The Chicago Tribune has called Daniels 'today's gold standard among countertenors.' Gramophone magazine acknowledged his contribution to recorded excellence as well as his expansion of the repertoire for his voice type by naming him one of the 'Top Ten Trailblazers' in classical music today. . . .  Highly sought after for the works of Handel, Monteverdi, Gluck, Mozart, and Britten, Daniels has been featured on the great operatic stages of the world to overwhelming critical acclaim. Highlights of recent seasons include multiple appearances at the Metropolitan Opera as the title role of Giulio Cesare in David McVicar's inventive production, Prospero in the Baroque pastiche The Enchanted Island, and in the title role of Gluck's Orfeo ed Euridice in a new production marking Mark Morris's debut at the Met as a stage director and conducted by music director James Levine. Appearances at the Lyric Opera of Chicago include the title role in Handel's Rinaldo, Oberon in Britten's A Midsummer Night's

Dream, and Lichas in Peter Sellars's new production of Handel's Hercules._Additional appearances include Arsamenes in Handel's Xerxes and Bertarido in Handel's Rodelinda with the San Francisco Opera. At Santa Fe Opera his role debut as Roberto in Vivaldi's Griselda, the work's first major U.S. production by Peter Sellars, drew rave reviews. http://smtd.umich.edu/about/faculty-profiles/david-daniels/ (Upon information and belief, this site was removed sometime in 2019.)

19.     Plaintiff sought a career as a "countertenor" (also referred to as contra tenor), a unique type of classical male singing voice whose vocal range is equivalent to that of the female contralto or mezzo-soprano voice types.

20.     Daniels had established an extremely successful career as a countertenor prior to joining the faculty of the University, as set forth in part above, and had multiple high-level connections in the performing and recording industries and in the international opera community.

21.     Beginning in Fall 2016, Plaintiff was one of Daniels' students at the University. In addition to attending his class, Daniels was Plaintiff's Voice Professor, attending private sessions with him once a week.

22.     Daniels was the only countertenor faculty at the University; as such Plaintiff was reliant on him for instruction, coaching and career mentoring.

23.     Daniels continually promoted the idea that he was responsible for placing students in roles and on stage and that he would do the same for Plaintiff.

24.     Daniels was by far the faculty member most uniquely able to assist Plaintiff in launching a career as a countertenor. In addition to being the only countertenor, Daniels was one of the few faculty members who had his own professional manager, something that would be very advantageous to a student.

25.    Based upon Daniels' position as his Professor, continual promises of career assistance and his friendly overtures and encouragement, Plaintiff viewed Daniels as a professional mentor as well as his Professor. Daniels organized auditions for Plaintiff with top level conductors and agents visiting the University and promised to connect him with his own manager and additional professional opportunities.

26.    Daniels sought out male students for sexual interactions and harassment.

27.    Plaintiff became a sexual target of Daniels.

**Defendants Dworkin, Kendall, Racine, and West knew or should have known
Daniels posed a high risk of sexual harassment to students before they hired
and awarded him tenure**

28.    At the time Daniels was hired by the University he had a long, well-known reputation for being sexually inappropriate.

29.    An SMTD Professor testified that the first time he met Daniels, when he himself was a student, Daniels forcibly grabbed and kissed him, and propositioned him for sex.

30.    Another SMTD Professor testified that at the time Daniels was hired, he knew that Daniels had sent "inappropriate pictures via text messages" to one of his own former classmates when he was a student at the SMTD. This Professor admitted he had "always known" Daniels to be "open sexually in terms of his conversations."

31.    When some University faculty members, including the head of Daniels' department, Defendant West, the former Chair of the Voice Department at SMTD, learned that Daniels had been hired, they openly discussed that "someone's got to tell him to keep his hands off the [male] SMTD students," and wondered "whether it should be the dean or the department chair [Defendant West] to speak to [Daniels] about behaving appropriately in an academic setting." No such conversation took place with Daniels.

32.     One faculty member described a conversation in which West stated, "they're hiring David Daniels, and someone needs to be sure that he's not going to be engaging with young [male] students."

33.     Another SMTD Professor testified that at the time of Daniels' hire he was aware of rumors that Daniels was "very outwardly sexual," and that once Daniels was at the SMTD, the Professor was "definitely" aware that Daniels was outwardly sexual in his language, and that Daniels' behavior was generally known.

34.     Another faculty member testified that many members of the Voice department commented on or had concerns about Daniels being sexually forward at the SMTD.

35.     On May 17, 2018, upon the recommendations of Dworkin, Kendall, Racine, and West, Daniels was granted tenure by the University Board of Regents, in spite of the fact that by this time, the University had received multiple credible allegations of sexual misconduct against him, including a complaint filed with the University's Office of Institutional Equity, as set forth below.

36.     With tenure, Daniels was provided with employment and income protection. Indeed, as of today's date Daniels is still on the University payroll.

**Defendants failed to train and monitor faculty, including Daniels, to ensure compliance with the law, leading to the events here.**

37.     Defendants Seney, Heatlie and Frumkin maintained a policy prohibiting sexual harassment of students by faculty.

38.     The policy set forth the definition and examples of prohibited sexual harassment, which include all of the acts complained of herein.

39.     That policy was not distributed to SMTD students.

40.     Defendants Seney, Heatlie, Frumkin, West and Racine did not require that SMTD

faculty read or be trained on the policy.

41.     With regard to how a student could report sexual harassment by a faculty member, the policy was extremely vague; no specifics were provided.

42.     Defendants did not require that faculty receive any training on sexual harassment of students.

43.     Defendants did not require that students receive any training on sexual harassment by faculty.

44.     The Interim Dean at the SMTD, Melody Racine, testified that she recalls no specific training she ever had with regard to sexual harassment.

45.     Defendants did not require training for employees "responsible" for reporting sexual harassment of students by faculty, or training for students making them aware of the identity and role of "responsible" employees.

46.     In March 2018, Defendants Seney, Heatlie and Frumkin at the OIE received a complaint of sexual harassment against Daniels alleging that he solicited a male student for sex on the dating app Grindr. Defendants did not perform an investigation, and closed the file. The Defendants had reason to know the complaint was credible, and that Daniels was sexually harassing his students, but took no action. Even then, Defendants did not require Daniels, the other faculty, nor students to obtain any training.

47.     The then-University Title IX Coordinator, Defendant Pamela Heatlie, testified that even after this lawsuit was filed in October 2018, she made no attempt to learn whether David Daniels had ever received sexual harassment training.

48.     As of the date of her deposition, August 1, 2019, Heatlie was unable to say whether all faculty at the SMTD had received sexual harassment training.

**Defendants ignored sexual harassment by faculty, and in particular by David Daniels.**

49.     Defendants' custom and practice of deliberate indifference to sexual misconduct goes back many years, and encompasses many officials. It is systemic and institutionalized within the SMTD.

50.     By way of example, an SMTD Professor testified that when he had been an SMTD student years prior, he tried to notify Defendant Racine of his own experience being sexually harassed by an SMTD Professor, but that Racine turned him away.

51.     In December 2018 and February 2019, the Michigan Daily reported that a former student's complaint that a UM professor sexually assaulted her went unanswered for over a year. Multiple students alleged that UM tolerated the professor's well-known, widespread sexual misconduct towards students throughout his 40-year career. Much like in this case, the professor was allowed to retire in lieu of discipline. *See* Sammy Sussman, *"Sexual misconduct complaint about U professor goes unanswered for more than a year."* The Michigan Daily (February 5, 2019),  https://www.michigandaily.com/section/campus-life/sexual-misconduct-complaint-about-u-professor-goes-unanswered-over-year. *See also* Sammy Sussman, *"Former students bring 40 years of misconduct allegations by SMTD professor."* The Michigan Daily (December 10, 2018),  https://www.michigandaily.com/section/community-affairs/former-students-bring-40-years-misconduct-allegations-smtd-professor.

52.     Defendants repeatedly failed to act on known, obvious circumstances, including as to David Daniels.

53.     Defendants had reasonable notice of Daniels' harassment, and, based on the totality of the circumstances, were aware of a substantial probability that sexual harassment was occurring. Defendants knew or should have known of Daniels' harassment.

54.      In September 2017 the SMTD "Recruitment Coordinator," who worked closely with the faculty of the Voice Department, told Daniels he should watch out for one of his male students who was complaining openly that Daniels was "sexual" during his voice lessons. No report was made, nor was this claim investigated.

55.      Plaintiff watched as Daniels blackballed this male student to industry professionals for having reported his sexual misconduct.

56.      A Professor who described himself as a "mandatory reporter," and who was the "Ombudsman," and "Graduate Student Advisor" for the SMTD testified that in March 2018 he received a complaint from a student that Daniels was soliciting male students for sex and that there was concern by students that Daniels would soon obtain tenure. This Professor also was aware that that a SMTD Graduate Instructor had been told about the solicitations.

57.      The student told the Professor that other male students were afraid to make a report because of "fear."

58.      This Professor, who reported to Defendants West and/or Racine, did not make a report about what he had been told. He told another faculty member, who was assigned as Daniels' faculty "mentor, of the complaint in passing. She did nothing.

59.      Other professors were aware of similar solicitations.

60.      Daniels made sexual comments about students to multiple faculty members, including over dozens of remarks to one faculty member. No report was made.

61.      In March 2018, an anonymous complaint was made to the University Title IX "Office of Institutional Equity" (hereafter "OIE") that Daniels was "propositioning [male] students of the dating app 'Grindr,' and offering them money for sex acts."

62.      An OIE investigator, Defendant Elizabeth Seney, met with Daniels. She did not

attempt to corroborate the allegations against Daniels during this meeting, but Daniels categorically denied them.

63.     Seney did not ask Daniels about his text messages or social media accounts, and not request to view his phone, activity on Grindr, or any of his communications with students of the University or SMTD.

64.     The matter was closed the next day with no finding against Daniels. Based on the specifics of the allegation it was highly likely that it was true. Indeed, later documents proved that not only was this student solicited for sex on Grindr, but others were as well.

65.     Once the matter was closed, Daniels wrote to Seney stating, "I want to thank you again for your incredibly professional and non-judgmental approach with me yesterday…thank you again.  All my best and admiration for the job you do."  Seney replied, thanking Daniels for "taking the time to share this with me…and [for] your open and sincere participation in the conversation."

66.     Defendant Seney, the investigator, was deliberately indifferent to ensuring that the matter was correctly dealt with. She knew or should have known that further action was required to stop Daniels from engaging in sexual misconduct towards students.

67.      Daniels told multiple other people within the SMTD that the OIE told him they had "found no wrongdoing so they were closing the case."

68.     In April 2018, Plaintiff told an SMTD Professor that Daniels behaved in a sexually inappropriate manner towards him. The Professor responded that SMTD officials "don't care. The whole School of Music is like this."

69.     The Professor recounted that when he had been and SMTD student years prior, he tried to notify Defendant Racine of his own experience being sexually harassed by an SMTD

Professor, but that Racine turned him away. The Professor explained to Plaintiff that there was "no chance" and "a very low probability that anyone will take [his claims] seriously."

70.     The Associate Vice Provost of Faculty and Academic Affairs and Interim Senior Director of the Office of Institutional Equity, Defendant Jeffery Frumkin, testified that he is aware that it was an "open secret" at the SMTD that Daniels was overtly sexual in the way he talked to students, especially male students, and that Daniels' sexual talk and "behavior" was very open.

71.     Racine and other Defendants knew that students are often hesitant to come forward with complaints of sexual harassment by faculty because of fear of retaliation and embarrassment, concern about whether they will be able to continue in school, and fear for their own careers, but took no steps to remediate that issue.

### Daniels sexually harassed and assaulted Plaintiff on the basis of his gender

72.     As a countertenor, Plaintiff worked closely, most often one-on-one with Daniels at SMTD.  Daniels lauded Plaintiff's talents and promised him that with Daniels' connections and help, Plaintiff would have a very successful opera career.

73.     Generally, SMTD graduate students' studio professors are expected to act as mentors to students, and assist them in networking and making professional connections.

74.     On the evening of March 24, 2017 Daniels invited Plaintiff to his home to watch "Ru Paul's Drag Race" because he was "lonely" and wanted to discuss Plaintiff's "career."

75.     Plaintiff was served several drinks of bourbon. Late on the 24th or during the early morning hours of the 25th, Plaintiff said he was tired and needed sleep for a performance the next day. Daniels handed him what he said was a Tylenol PM but was actually the sleep medication Ambien. Daniels then removed Plaintiff's clothes, forced himself upon Plaintiff and groped and touched his genitals and face.

76.     Shortly thereafter, Daniels told Plaintiff that he would likely be receiving a full fellowship for the two years of his graduate program.

77.     From the time Plaintiff began his studies at SMTD in 2016 until August 2018, when Daniels was placed on paid leave, Plaintiff was continually subjected to a barrage of sexual harassment in class, studio sessions, and via text messages, including, but not limited to:

    a.  requests for pictures of Plaintiff's genitals

    b.  requests for a video of Plaintiff masturbating

    c.  graphic pictures and videos of genitals and sexual toys

    d.  video footage of Daniels masturbating

    e.  talk of other students' bodies, Daniels' sexual preferences and activities, and that he wished Plaintiff was gay.

78.     Other students have described Daniels as "manipulative," "sneaky," and "creepy," in his effort to "break down barriers" with students.

79.     Daniels manipulated Plaintiff and broke down what would have been normal barriers between teacher and students.

80.     This conduct was unwelcome. Plaintiff was trapped by Daniels, in that Daniels had control over his academic and professional career. In spite of Daniels' multiple requests, Plaintiff never shared any sexual photos or videos of himself. He attempted to keep Daniels at bay, and to not offend or anger him while he sought to complete his degree.

**Defendants knew or should have know of the sexual harassment of male students; this resulted in the sexual assault and harassment of Plaintiff**

81.     Defendants knew or should have know of Daniels' sexual misconduct.

82.     Because of Defendants failure to take appropriate corrective action on this knowledge, dozens of students were subjected to sexual misconduct and harassment, including

Plaintiff.

83.    On March 26, 2019, Defendants completed an investigation and report into Daniels'

sexual harassment of students other than Plaintiff entitled, "UM-Daniels Investigation."

84.    The report found that Daniels engaged in multiple violations of the University's

sexual harassment policies between 2016 and 2018, including the events set forth below.

85.    Daniels solicited at least two male students on the dating app Grindr to have sex

with him in exchange for money.

86.    Daniels offered two male students money in exchange for performing sex acts in

front him in a hotel room.

87.    Over 20 individuals, including mainly male students, faculty, staff and/or former

students had first-hand information about Daniels subjecting SMTD students to sexually harassing

communications, and/or comments about other students.

88.    Some of the communications and/or comments directed at other male students

included Daniels sending videos of himself masturbating, solicitations to engage in sexual activity

for money or without money, sending messages to students stating: "looking to make hot dad/son

fantasy happen! $$$$$$..." telling students to "keep this quiet… I'm one year from tenure..,"

sending nude photos of himself, asking about students sexual practices, making comments of a

sexual nature to various students "on almost a daily basis," and on a "fairly regular basis,"

including what students he wanted to have sex with, contacting an incoming freshmen student and

describing in graphic detail a sexual encounter he had engaged in, asking students if they were gay

and making lewd comments during lessons.

89.    The report also describes students and faculty stating that Daniels and/or his spouse

had sex with male University students, including a student who was "incapacitated," and

propositioning and/or making sexual advances to students.

### Defendants took action against Daniels only when they were forced to because his conduct became public

90.     On July 14, 2018, an anonymous post was placed on the University of Michigan

Opera Facebook page stating, in part, "David Daniels is a serial rapist who drugs and rapes boys

with his husband…."

91.     On July 16, 2018 an unnamed person sent an email to the University of Michigan

Regents, the SMTD and Executive Officers stating:

> Date: July 16, 2018 at 11:09:41 AM EDT
> Subject: David Daniels Sexual Assault
>
> Distinguished members of the University of Michigan Administration, Board of Regents, and SMTD faculty,
>
> In 2010, a member of your faculty, David Daniels, and his husband drugged and raped a young singer. He never reported it because he was terrified that a famous and successful singer could derail his nascent career.
>
> This rape was a planned and coordinated attack. Daniels and his husband have done this before and have done it since and they choose their prey carefully. Besides sexual assaults, dozens of young men are unwilling recipients of pictures of Daniels' genitalia. He's a known serial sexual predator.
>
> The brave young singer has published his story, but has withheld the names of his rapists. For now. However, there are exposes in the works which will be published in national news outlets in which the names of Daniels and other predators in the music world will be revealed. This will in turn empower David Daniels' countless other victims to speak out. And I can promise you that they will.
>
> You need to decide which side of history you want to be on – the side of those who covered up crimes and then had their legacies destroyed (like Joe Paterno at Penn State) and the reputation of their institutions damaged, OR the side of those who stood up against sexual assault and abuse.
>
> I have now informed you of Daniels' actions. Many people in the opera & classical world are aware of them and are distancing themselves from Daniels and UM. Everything you do from now on will be seen either as doing the right thing or engaging in a cover-up.

I hope you do the right thing.

92.     On July 18, 2018 the University Police Department (UMPD) interviewed the former student from Rice University who stated he had been "raped by David Daniels and his husband Scott in 2010…" in Houston.  He said he had been "drugged" prior to the rape.

93.     The UMPD also interviewed Daniels on July 18, 2018.  He admitted that with regard to the allegation of rape in Houston, he and his husband and Scott were drinking with the student and that "we were all pretty drunk."  He admitted they had all taken a drug, believed to be Ambien, and had sex.  Daniels stated "Scott and I had been experimenting with using [Ambien] during sex… and I gave [the student] one."

94.     The description of this assault was very similar to Daniels' assault of Plaintiff.

**A faculty member reported Daniels' sexual assault of Plaintiff; the OIE failed to take any action until after Plaintiff filed a federal lawsuit on October 24, 2018**

95.     The events in Houston described above became public, causing Plaintiff to feel that he could finally talk to a faculty member about the similar assault he had been subjected to, and he did so.

96.     The faculty member testified that he was very concerned about what Plaintiff described to him, and reported the assault to the OIE on August 23, 2018.

97.     Defendants did nothing. No file was opened.

98.     On October 30, six days after this lawsuit was filed, Plaintiff received for the first time a communication from Defendant Seney stating, in part, "I understand you may have concerns regarding sexual misconduct by a faculty member."

99.     A Houston, Texas grand jury on July 25, 2019, indicted University of Michigan Professor David Daniels, and his husband, William A. Scott Walters, for second-degree criminal sexual conduct in the case of the former Rice University student.

100.    Defendants have taken no action to investigate how it was that they hired, promoted, and continued to employ Daniels, ignoring his open sexually predatory behavior.

**Defendants used the OIE investigation process and findings to retaliate against Plaintiff and place him in a false light.**

101.    Daniels' sexual assault of Plaintiff was reported to the OIE by a faculty member on or about August 24, 2018.

102.    On or about October 24, 2018, the day Plaintiff sued the University for violations of Title IX in the U.S. District Court for the Eastern District of Michigan, Defendants decided to begin an investigation into Plaintiff's allegations, even though Plaintiff did not request that they do so.  The OIE did not contact Plaintiff until October 26, 2019.

103.    All Defendants are listed as witnesses in the federal litigation.

104.    The investigation by Defendants Seney, Heatlie and Frumkin is referred to in the federal Complaint.

105.    The "Lipian-Daniels" investigation was concluded and findings ("Report") were made by the OIE September 3, 2019, over one year after the OIE received the complaint.  This period of time was inordinately lengthy. Per Defendants, investigations should typically be concluded within less than six months. In the parallel investigation of UM-Daniels, there were far more witnesses and facts adduced and the matter was concluded in March 2019. The inordinate length of the Lipian-Daniels investigation is directly attributable to Seney and the OIE's desire to compile a Report that concluded that Plaintiff was not sexually harassed.

106.    In order to retaliate against him, and in an attempt to place him in a false light, the OIE Title IX office and Defendant Seney came to the conclusion that Plaintiff welcomed the sexual harassment, and that he engaged in a mutual, voluntary sexual relationship with Daniels.

107.    The OIE and Seney failed to follow standard procedures for investigations and

findings, and treated Plaintiff differently than similarly situated students who had not sued the University.

108.    Seney's intent, on behalf of the other individual Defendants, was to single out Plaintiff and to reach a desired, but false result.

109.    The OIE and Seney, on behalf of the other individual Defendants, made a finding that "the evidence is not sufficiently clear to reach the conclusion that a violation [of the sexual harassment policy] occurred based on the preponderance of the evidence."  In other words, the OIE could not make a finding due to lack of evidence.

110.    Nonetheless, the OIE and Seney spent 13 pages gratuitously describing all "evidence" they compiled to put Plaintiff in a negative light.  The recitations included material of an extremely personal nature that could be embarrassing and that will likely be made public, as they are aware. This exercise was procedurally needless, in that no finding as to sexual harassment was to be made. It was designed only to harm the Plaintiff; there was no other rational basis for this course of action as a matter of fact or procedure.

111.    Notably, the OIE and Seney found that Daniels' identical acts of misconduct, when perpetrated on other students who had not sued the University, were *per se* violations of the sexual harassment policy.

112.    By this time, the OIE and Seney had gathered an overwhelming amount of "evidence" of Daniel's overt lying, including directly to the University, sexual assaults, sexual solicitations of students of sex for money, obsession with sex, overt sexual overtures to Plaintiff and other males, and hundreds of sexual texts to students. The OIE and Seney did not include any of this corroborating information in the Lipian-Daniels Report; this evinces a clear difference in treatment.

113.     Similarly situated students who had been subjected to the same type of sexual harassment by Daniels, were not blamed by the OIE and Seney for welcoming, consenting to, and failing to explicitly object to Daniels conduct; they were not  asked about all of their communications; and were treated as blameless victims of Daniels, all in contrast to Seney's transparent efforts to victim-blame Plaintiff.

114.     Seney intentionally did not allow Plaintiff to answer questions put to him by the OIE in writing, a process that is allowed for all other students where appropriate.

115.     The OIE did not need to issue any report as to Lipian-Daniels. Their March 2019 findings in UM-Daniels provide more than enough evidence to terminate Daniels, and Plaintiff never requested an investigation. Moreover, Plaintiff left the University in Spring 2019. The only purpose for the September 3, 2019 was to place him in a false light.

116.     Daniels has not yet been terminated or disciplined. He presently remains on the University payroll, 12 months after the complaints against Daniels were made.

## COUNT I
### *Sex discrimination in violation of*
### *The Michigan Elliott-Larsen Civil Rights Act*

117.     Plaintiff repeats and realleges paragraphs 1 through 116 set forth above with the same force and effect as though set forth in full herein.

118.     Defendants are "agents" of an "educational institution" covered by MCL 37.2401.

119.     Pursuant to MCL 37.2102, Defendants were prohibited from engaging in sex discrimination, which includes sexual harassment. Sexual harassment means unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature where submission to the conduct or communication is made a term or condition either explicitly or implicitly to obtain education or the conduct or communication has the purpose

or effect of substantially interfering with an individual's education, or creating an intimidating, hostile, or offensive educational environment.

120.     As described aforesaid, Plaintiff was sexually harassed by his professor in violation of the law.

121.     The action and inactions of Defendants resulted in discrimination against Plaintiff in the full utilization of or benefit from an educational institution or the services, activities, or programs provided by the educational institution.

122.     Although Defendants knew or should have known of the substantial probability that Daniels was sexually harassing students, including Plaintiff, they failed to take any corrective action.

123.     Defendant's actions as described above were in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

124.     As a direct and proximate result of Defendants unlawful actions, Plaintiff has suffered irreparable harm, injury, and damages, including but not mental and emotional distress, anxiety and mental anguish, humiliation and embarrassment; and loss of personal and professional reputation and opportunities.

### COUNT II
#### *Retaliation in violation of*
#### *The Michigan Elliott-Larsen Civil Rights Act*

125.     Plaintiff repeats and realleges Paragraphs 1 through 124 set forth above with the same force and effect as though set forth in full herein.

126.     Defendants are "agents" of an "educational institution" covered by MCL 37.2401.

127.     Plaintiff engaged in conduct protected under the ELCRA including, but not limited to, complaining orally and in his federal litigation about the sexual harassment he experienced

from David Daniels, which was directed toward him because of his gender (male).

128.　Plaintiff's treatment, by the OIE and individual Defendants was retaliatory and occurred, in part, because Plaintiff opposed, objected to and refused to acquiesce in discriminatory employment practices, including discrimination based on gender, in violation of the anti-retaliation provisions of Michigan's Elliott-Larsen Civil Rights Act, MCL § 37.2101, *et. seq.*

129.　The retaliation would have not occurred had Plaintiff not engaged in activity protected by the Elliott-Larsen Civil Rights Act.

130.　The actions of Defendants were intentional, in deliberate disregard for the rights and sensibilities of Plaintiff.

131.　As a direct and proximate result of those actions, the terms, conditions, and privileges of Plaintiff's education were adversely affected, and the damaging Lipian-Daniels OIE Report was constructed to construe him in a negative light.

132.　As a direct and proximate result of Defendants unlawful actions, Plaintiff has suffered irreparable harm, injury, and damages, including but not mental and emotional distress, anxiety and mental anguish, humiliation and embarrassment; and loss of personal and professional reputation and opportunities.

## COUNT III
### *False Light*

133.　Plaintiffs repeat and re-allege each and every preceding paragraph as if fully set forth herein.

134.　Defendants had knowledge of or acted in a reckless disregard as to the falsity of the publicized matter and the false light in which Plaintiffs were placed in the Seney/Frunkim OIE Report. The insinuation was that Plaintiff was not harmful.

135.　The statements were unreasonable, highly offensive and were designed to harm

Plaintiffs' reputations and career opportunities.

136.    As a direct and proximate result of Defendants unlawful actions, Plaintiff has suffered irreparable harm, injury, and damages, including but not mental and emotional distress, anxiety and mental anguish, humiliation and embarrassment; and loss of personal and professional reputation and opportunities.

**Relief Requested**

Plaintiff demands judgment against Defendants as follows:

A.    Legal Relief:

    1.    Compensatory damages in whatever amount he is found to be entitled;

    2.    Exemplary and punitive damages in whatever amount he is found to be entitled;

    3.    An award of interest, costs, reasonable attorney fees, and expert witness fees.

B.    Equitable Relief:

    1.    An injunction out of this Court prohibiting any further acts of wrongdoing against Plaintiff;

    2.    An award of interest, costs and reasonable attorney fees; and,

    3.    Whatever other equitable relief appears appropriate at the time of final judgment.

Dated: March 20, 2020

**DEBORAH GORDON LAW**
/s/Deborah L. Gordon (P27058)
Elizabeth A. Marzotto Taylor (P82061)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com

| Approved, SCAO | Original - Court<br>1st copy - Defendant | | 2nd copy - Plaintiff<br>3rd copy - Return |
|---|---|---|---|

| STATE OF MICHIGAN<br>22ND  JUDICIAL DISTRICT<br>JUDICIAL CIRCUIT<br>COUNTY PROBATE | **SUMMONS** | CASE NO.<br>20 **20-000310-CZ** |
|---|---|---|

Court address
101 E. Huron Street, Ann Arbor, MI 48104

**JUDGE DAVID S. SWARTZ**

Court telephone no.
734-222-3270

Plaintiff's name(s), address(es), and telephone no(s).

ANDREW LIPIAN

v

Defendant's name(s), address(es), and telephone no(s).

AARON DWORKIN

Plaintiff's attorney, bar no., address, and telephone no.
Deborah L. Gordon (P27058)
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (form MC 21). The summons section will be completed by the court clerk.

## Domestic Relations Case

☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (form MC 21) listing those cases.

☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

## Civil Case

☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.

☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).

☐ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

☑ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in ☐ this court, ☑ U.S. District Court, Eastern District of Michigan, Southern Division ____ Court, where

it was given case number 18-cv-13321 ____ and assigned to Judge Arthur J. Tarnow ____ .

The action ☑ remains ☐ is no longer pending.

Summons section completed by court clerk.

**SUMMONS**

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:

1. You are being sued.

2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state).

3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.

4. If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date | Expiration date*<br>6/19/20 | Court clerk<br>/s/ Lindsay Ryan  3/20/2020 |
|---|---|---|

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

MC 01  (9/19)  **SUMMONS**

MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105

| PROOF OF SERVICE | SUMMONS | |
|---|---|---|
| | Case No. 20 | CZ |

TO PROCESS SERVER: You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the court clerk.

## CERTIFICATE / AFFIDAVIT OF SERVICE / NONSERVICE

| ☐ **OFFICER CERTIFICATE** | OR | ☐ **AFFIDAVIT OF PROCESS SERVER** |
|---|---|---|
| I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party (MCR 2.104[A][2]), and that: (notarization not required) | | Being first duly sworn, I state that I am a legally competent adult, and I am not a party or an officer of a corporate party (MCR 2.103[A]), and that: (notarization required) |

☐ I served personally a copy of the summons and complaint,
☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint,

together with _____
　　　　　　List all documents served with the summons and complaint

_____ on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |
| | | |

☐ I have personally attempted to serve the summons and complaint, together with any attachments, on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |
| | | |

I declare under the penalties of perjury that this proof of service has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

| Service fee $ | Miles traveled | Fee $ | | Signature |
|---|---|---|---|---|
| Incorrect address fee $ | Miles traveled | Fee $ | TOTAL FEE $ | Name (type or print) |
| | | | | Title |

Subscribed and sworn to before me on _____ , _____ County, Michigan.
　　　　　　　　　　　　　　　　　　　　Date

My commission expires: _____  Signature: _____
　　　　　　　　　　　　Date　　　　　　　　　　　　　Deputy court clerk/Notary public

Notary public, State of Michigan, County of _____

## ACKNOWLEDGMENT OF SERVICE

I acknowledge that I have received service of the summons and complaint, together with _____
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Attachments

_____ on _____
　　　　　　　　　　　　　　　　　　　Day, date, time

_____ on behalf of _____

Signature

**SUMMONS**   CZ

Case No. 20

**PROOF OF SERVICE**

TO PROCESS SERVER: You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the court clerk.

## CERTIFICATE / AFFIDAVIT OF SERVICE / NONSERVICE

| ☐ OFFICER CERTIFICATE | OR | ☐ AFFIDAVIT OF PROCESS SERVER |
|---|---|---|
| I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party (MCR 2.104[A][2]), and that: (notarization not required) | | Being first duly sworn, I state that I am a legally competent adult, and I am not a party or an officer of a corporate party (MCR 2.103[A]), and that: (notarization required) |

☐ I served personally a copy of the summons and complaint,
☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint,

together with _____ List all documents served with the summons and complaint _____ on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |
| | | |

☐ I have personally attempted to serve the summons and complaint, together with any attachments, on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |
| | | |

I declare under the penalties of perjury that this proof of service has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

| Service fee | Miles traveled | Fee | | | |
|---|---|---|---|---|---|
| $ | | $ | | | |
| Incorrect address fee | Miles traveled | Fee | TOTAL FEE | | |
| $ | | $ | $ | | |

Signature

Name (type or print)

Title _____ County, Michigan.

Subscribed and sworn to before me on _____ on _____.
Date                                                        Day, date, time

Signature: _____ Deputy court clerk/Notary public

My commission expires: _____
Date

Notary public, State of Michigan, County of _____

## ACKNOWLEDGMENT OF SERVICE

I acknowledge that I have received service of the summons and complaint, together with _____ Attachments

on _____ on behalf of _____.
Day, date, time

Signature _____.

Approved, SCAO

| Original - Court | 2nd copy - Plaintiff |
|---|---|
| 1st copy - Defendant | 3rd copy - Return |

**STATE OF MICHIGAN**

| 22ND | JUDICIAL DISTRICT | SUMMONS | CASE NO. |
|---|---|---|---|
| | JUDICIAL CIRCUIT | | 20-000310-CZ |
| | COUNTY PROBATE | | |

20 ___ CZ

**Court address**
101 E. Huron Street, Ann Arbor, MI 48104

**Court telephone no.**
734-222-3270

Plaintiff's name(s), address(es), and telephone no(s).
ANDREW LIPIAN

v

Defendant's name(s), address(es), and telephone no(s).
PAMELA HEATLIE

**JUDGE DAVID S. SWARTZ**

Plaintiff's attorney, bar no., address, and telephone no.
Deborah L. Gordon (P27058)
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (form MC 21). The summons section will be completed by the court clerk.

**Domestic Relations Case**

☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (form MC 21) listing those cases.

☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

**Civil Case**

☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.

☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).

☐ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

☑ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in ☐ this court, ☑ U.S. District Court, Eastern District of Michigan, Southern Division Court, where it was given case number 18-cv-13321 and assigned to Judge Arthur J. Tarnow

The action ☑ remains ☐ is no longer pending.

Summons section completed by court clerk.

**SUMMONS**

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to file a written answer with the court and serve a copy on the other party or **take other lawful action with the court** (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date | Expiration date* | Court clerk |
|---|---|---|
| 6/19/20 | | Lisa Brown 3/20/2020 |

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

MC 01 (9/19) **SUMMONS**

| Approved, SCAO | Original - Court<br>1st copy - Defendant | 2nd copy - Plaintiff<br>3rd copy - Return |
|---|---|---|

| STATE OF MICHIGAN | | CASE NO. |
|---|---|---|
| 22ND     **JUDICIAL DISTRICT**<br>**JUDICIAL CIRCUIT**<br>**COUNTY PROBATE** | **SUMMONS** | 20        CZ<br>20-000310-CZ |

Court address
101 E. Huron Street, Ann Arbor, MI 48104

**JUDGE DAVID S. SWARTZ**

Court telephone no.
734-222-3270

Plaintiff's name(s), address(es), and telephone no(s).
ANDREW LIPIAN

v

Defendant's name(s), address(es), and telephone no(s).
CHRISTOPHER KENDALL

Plaintiff's attorney, bar no., address, and telephone no.
Deborah L. Gordon (P27058)
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (form MC 21). The summons section will be completed by the court clerk.

**Domestic Relations Case**

☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (form MC 21) listing those cases.

☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

**Civil Case**

☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.

☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).

☐ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

☑ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in ☐ this court, ☑ U.S. District Court, Eastern District of Michigan, Southern Division     Court, where it was given case number 18-cv-13321    and assigned to Judge Arthur J. Tarnow   .

The action ☑ remains ☐ is no longer pending.

Summons section completed by court clerk.

**SUMMONS**

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date | Expiration date*<br>6/19/20 | Court clerk Lisa Ryan 3/20/2020 |
|---|---|---|

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

MC 01 (9/19) **SUMMONS**                 MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105

| SUMMONS | |
|---|---|
| Case No. 20 | CZ |

**PROOF OF SERVICE**

TO PROCESS SERVER: You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the court clerk.

**CERTIFICATE / AFFIDAVIT OF SERVICE / NONSERVICE**

| ☐ **OFFICER CERTIFICATE** | OR | ☐ **AFFIDAVIT OF PROCESS SERVER** |
|---|---|---|
| I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party (MCR 2.104[A][2]), and that:  (notarization not required) | | Being first duly sworn, I state that I am a legally competent adult, and I am not a party or an officer of a corporate party (MCR 2.103[A]), and that:  (notarization required) |

☐ I served personally a copy of the summons and complaint,

☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint,

together with _____
List all documents served with the summons and complaint

_____ on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |
| | | |

☐ I have personally attempted to serve the summons and complaint, together with any attachments, on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |
| | | |

I declare under the penalties of perjury that this proof of service has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

| Service fee $ | Miles traveled | Fee $ | | Signature |
|---|---|---|---|---|
| Incorrect address fee $ | Miles traveled | Fee $ | **TOTAL FEE** $ | Name (type or print) |
| | | | | Title |

Subscribed and sworn to before me on _____ , _____ County, Michigan.
Date

My commission expires: _____ Signature: _____
Date                                                           Deputy court clerk/Notary public

Notary public, State of Michigan, County of _____

**ACKNOWLEDGMENT OF SERVICE**

I acknowledge that I have received service of the summons and complaint, together with _____
Attachments

_____ on _____
Day, date, time

_____ on behalf of _____ .
Signature

| Approved, SCAO | Original - Court<br>1st copy - Defendant | 2nd copy - Plaintiff<br>3rd copy - Return |
|---|---|---|

| STATE OF MICHIGAN | | CASE NO. |
|---|---|---|
| **22ND** JUDICIAL DISTRICT<br>JUDICIAL CIRCUIT<br>COUNTY PROBATE | **SUMMONS** | 20 20-000310-CZ CZ |

**Court address**
101 E. Huron Street, Ann Arbor, MI 48104

Court telephone
734-222-3270

JUDGE DAVID S. SWARTZ

| Plaintiff's name(s), address(es), and telephone no(s). | | Defendant's name(s), address(es), and telephone no(s). |
|---|---|---|
| ANDREW LIPIAN | v | ELIZABETH SENEY |

Plaintiff's attorney, bar no., address, and telephone no.
Deborah L. Gordon (P27058)
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (form MC 21). The summons section will be completed by the court clerk.

**Domestic Relations Case**

☐ There are no pending or resolved cases within the jurisdiction of the circuit court involving the family members of the person(s) who are the subject of the complaint.

☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (form MC 21) listing those cases.

☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

**Civil Case**

☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.

☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).

☐ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

☑ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in ☐ this court, ☑ U.S. District Court, Eastern District of Michigan, Southern Division Court, where it was given case number 18-cv-13321 and assigned to Judge Arthur J. Tarnow

The action ☑ remains ☐ is no longer pending.

Summons section completed by court clerk. **SUMMONS**

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:

1. You are being sued.
2. YOU HAVE 21 DAYS after receiving this summons and a copy of the complaint to file a written answer with the court and serve a copy on the other party or take other lawful action with the court (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date | Expiration date* | Court clerk |
|---|---|---|
| 6/19/20 | | |

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

MC 01 (9/19) **SUMMONS**

| SUMMONS | |
|---|---|
| Case No. 20 | CZ |

## PROOF OF SERVICE

TO PROCESS SERVER: You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the court clerk.

### CERTIFICATE / AFFIDAVIT OF SERVICE / NONSERVICE

☐ **OFFICER CERTIFICATE**   OR   ☐ **AFFIDAVIT OF PROCESS SERVER**

I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party (MCR 2.104[A][2]), and that: (notarization not required)

Being first duly sworn, I state that I am a legally competent adult, and I am not a party or an officer of a corporate party (MCR 2.103[A]), and that: (notarization required)

☐ I served personally a copy of the summons and complaint,
☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint,

together with _____ List all documents served with the summons and complaint

_____ on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |
| | | |

☐ I have personally attempted to serve the summons and complaint, together with any attachments, on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |
| | | |

I declare under the penalties of perjury that this proof of service has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

| Service fee | Miles traveled | Fee | | | |
|---|---|---|---|---|---|
| $ | | $ | | | |
| Incorrect address fee | Miles traveled | Fee | TOTAL FEE | | |
| $ | | $ | $ | | |

Signature _____

Name (type or print) _____

Title _____

Subscribed and sworn to before me on _____ Date _____ County, Michigan.

My commission expires: _____ Date _____ Signature: _____ Deputy court clerk/Notary public

Notary public, State of Michigan, County of _____

### ACKNOWLEDGMENT OF SERVICE

I acknowledge that I have received service of the summons and complaint, together with _____ Attachments

_____ on _____ Day, date, time _____ on behalf of _____

Signature _____

| Approved, SCAO | Original - Court<br>1st copy - Defendant | 2nd copy - Plaintiff<br>3rd copy - Return |
|---|---|---|

| STATE OF MICHIGAN | | CASE NO. |
|---|---|---|
| **22ND**    JUDICIAL DISTRICT<br>JUDICIAL CIRCUIT<br>COUNTY PROBATE | **SUMMONS** | 20          CZ<br>20-000310-CZ |

| Court address | | Court telephone no. |
|---|---|---|
| 101 E. Huron Street, Ann Arbor, MI 48104 | JUDGE DAVID S. SWARTZ | 734-222-3270 |

| Plaintiff's name(s), address(es), and telephone no(s). | | Defendant's name(s), address(es), and telephone no(s). |
|---|---|---|
| ANDREW LIPIAN | **v** | STEVEN WEST |

Plaintiff's attorney, bar no., address, and telephone no.
Deborah L. Gordon (P27058)
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (form MC 21). The summons section will be completed by the court clerk.

**Domestic Relations Case**
☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.
☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (form MC 21) listing those cases.
☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

**Civil Case**
☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.
☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).
☐ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.
☑ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in ☐ this court, ☑ U.S. District Court, Eastern District of Michigan, Southern Division _____ Court, where

it was given case number 18-cv-13321 _____ and assigned to Judge Arthur J. Tarnow _____ .

The action ☑ remains ☐ is no longer pending.

Summons section completed by court clerk.     **SUMMONS**

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date | Expiration date*<br>6/19/20 | Court clerk |
|---|---|---|

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

MC 01 (9/19) **SUMMONS**        MCR 2.199(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105